IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONNIE L. NAVARRO,

Plaintiff,

vs.                                                    Case No. 06-1190-JTM

EATON CORPORATION and
BROADSPIRE SERVICES, INC.,

Defendants.

MEMORANDUM AND ORDER

*I.  Factual Background:*

Both parties have filed motions for summary judgment.  At issue is whether the plaintiff is entitled

to benefits under the Second Tier of the Long Term Disability Plan for U.S. Employees ("LTD Plan"), a

self-insured plan administered by the Eaton Corporation ("Eaton").  For the following reasons, defendants'

motion for summary judgment (Dkt. No. 27) is granted and plaintiff's motion for summary judgment (Dkt.

No. 25) is denied.

Under the LTD Plan, "covered disability" is defined as follows:

> • During the first 24 months of such disability, inclusive of any period of
> short term disability, you are totally and continuously unable to perform the
> essential duties of your regular position with the Company, or the duties
> of any suitable alternative position with the Company ["First Tier"]; and

> • During the continuation of such total disability following the first 24
> months, you are totally and continuously unable to engage in any
> occupation or perform any work for compensation or profit for which you

are, or may become, reasonably well fitted by reason of education, training or experience - at Eaton Corporation or elsewhere ["Second Tier"].

Administrative Record ("AR") 00031.  Therefore, under the terms of the Plan, to be eligible for the Second Tier benefits, the participant must be totally disabled and unable to undertake any activity for compensation. The Plan states that the Plan Administrator and/or Claims Administrator has "discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan. . . ."  AR 00046. Additionally, the Plan requires that a participant's disability is substantiated by objective evidence. Objective evidence includes physical examination findings; diagnostic test results; diagnoses; x-ray results; observation of anatomical, physiological or psychological abnormalities; and medications and/or treatment plans.  AR 00036.

Plaintiff, Connie Navarro, was employed by Eaton on October 18, 1987 as an assembler.  On October 29, 2002, she ceased her job as an assembler due to pain in her neck, shoulders, arms and legs caused by what her treating physicians diagnosed as multiple sclerosis and fibromyalgia.  Due to plaintiff's diagnosis, she received short term disability benefits for six months under the Eaton Corporation Short Term Disability Program.  Thereafter, she applied for LTD benefits under the First Tier definition of the LTD Plan on January 3, 2003.

In determining her eligibility for Tier One benefits, Broadspire Services, Inc. ("Broadspire"), the Claims Administrator, conducted a General Peer Review.  In this review, on April 3, 2003, Dr. Superfine, in conjunction with the plaintiff's treating physician, determined that there was not sufficient documentation to support a covered disability.  Dr. Superfine suggested that Broadspire obtain a Functional Capacity Evaluation ("FCE").  Thereafter, the FCE, conducted on April 29, 2003, concluded that "Mrs. Navarro

2

does not demonstrate the ability to meet the job demands of her position as an Assembler/Tester with Eaton Corporation.  Mrs. Navarro demonstrates to be currently functioning at the Sedentary physical demand level based on an 8-hour workday as defined by the U.S. Department of Labor." AR 00191.

The First Tier provides coverage for a participant who is unable to work at her own occupation at Eaton. Therefore, Navarro was approved for LTD benefits under this First Tier definition of "covered disability" effective April 29, 2003.  When the Administrator approved plaintiff's benefits, the approval noted that the benefits were set to expire on October 29, 2004.  Additionally, the Administrator informed plaintiff that "[i]f your disability should extend to the 24 months, we will reevaluate your claim for total disability as defined in Number 2 [Second Tier] above."  AR 00090.

On April 13, 2004, under the LTD Plan guidelines, Broadspire notified the plaintiff that it sought to collect information to determine if she was eligible for disability benefits under the LTD Benefits Second Tier after the expiration of her First Tier benefits.  In order to determine her eligibility, Broadspire solicited medical assessments, including medical records from her treating physicians, an FCE, and an Independent Medical Examination ("IME").   All of the assessments concluded that Navarro was not disabled. Specifically, plaintiff's treating physicians indicated that her multiple sclerosis was stable and had not worsened since the onset of her symptoms.  Additionally, on September 20, 2004, Dr. Munhall, a board certified Physical Medicine and Rehabilitation Independent Medical Examiner, performed a comprehensive neurological physical examination.  Dr. Munhall determined that plaintiff was able to work a full time, eight-hour work day at a sedentary physical demand level.  Terry Gross, a physical therapist, also completed a second FCE of plaintiff's abilities on September 12-14, 2004.  Mr. Gross determined that plaintiff could perform sedentary work.

Based on the independent examinations, Broadspire performed an Employability Assessment Report on October 19, 2004 and a Labor Market Survey on November 15, 2004. The reports concluded that there were three positions in the sedentary physical demand level for which plaintiff was qualified and capable to perform. Thereafter, Broadspire advised plaintiff in a letter dated January 4, 2005, that she did not meet the definition of disability under the LTD Plan's Second Tier. Plaintiff's LTD benefits were therefore terminated effective as of January 31, 2005.

Plaintiff appealed the denial in a letter dated April 7, 2005. Plaintiff submitted additional information in connection with the first level of appeal, which included a letter from Navarro dated June 15, 2005; progress notes from Dr. Mallonee dated February 17, 2004; office notes from Dr. Patterson dated May 3, 2005; and an IME, independently solicited by plaintiff's attorney, performed by Dr. Murati on May 17, 2005. Additionally, Broadspire engaged an independent peer reviewer, Dr. Spira, to consider all evidence obtained by and submitted to the Administrator. After considering the claim file, Dr. Spira concluded that the medical documentation failed to document an impairment from any occupation and that Navarro was restricted to performing sedentary work. Thus, in correspondence dated April 10, 2005, Broadspire upheld its original decision to deny continued LTD benefits under the Plan.

Plaintiff appealed the second denial on January 27, 2006. At the final level of appeal, plaintiff submitted a report by Jerry Hardin, a human resources consultant, and additional correspondence from Dr. Mallonee. Additionally, Eaton conducted two additional independent peer reviews by Dr. Cohan, a neurology specialist, and Dr. Michael Goldman, a specialist in physical medicine and rehabilitation. Finally, Eaton sent Navarro's entire claim file to an independent board certified neurologist with the Medical

4

Review Institute of America.  Based on all of the findings, taken together, Eaton certified the denial of plaintiff's LTD benefits.

II.  *Standard of Review and Conclusions of Law:*

Under the plan, the Plan Administrator and Claims Administrator have discretionary authority to determine eligibility for benefits.  "A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Charter Canyon Treatment Ctr v. Pool Co.*, 153 F.3d 1132, 1135 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding de novo review inapplicable where plan grants administrator discretion to construe terms of plan)).  Therefore, Eaton's decision must be upheld if there is substantial evidence supporting the decision. *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997, 1005-06 (10th Cir. 2004).  "Substantial evidence" is evidence which could be accepted by a reasonable person as adequate to a decision; it is "more than a scintilla but less than a preponderance." *Sandoval v. Aenta Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (quoting *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991)).

Plaintiff, however, argues that the court should apply a less deferential standard because the plan administrator operates under an inherent conflict of interest, pursuant to *Fought,* 379 F.3d at 997. Specifically, plaintiff argues that an inherent conflict of interest exists because Eaton is both the insurer and the plan administrator.  However, in order to apply the less deferential standard, plaintiff must prove that the administrator's dual role jeopardized his or her impartiality. *See Beasley v. Raytheon Aircraft Co.*, No. 04-1069-JTM, 2006 WL 1895453 at * 11-13 (D. Kan. July 7, 2006) (citing *Kimber v. Thiokol,*

5

196 F.3d 1092, 1098 (10th Cir. 1999)).  Although Eaton funds and administers the LTD plan, plaintiff has

not shown an actual conflict.  Moreover, funding for the LTD Plan represents .009% of Eaton's annual

operating expenses, which does not demonstrate an automatic conflict of interest.  *See Kimber*, 196 F.3d

at 1098 (finding .3% of operating expenses does not amount to a conflict of interest).

Substantial evidence supports Broadspire's decision in the present action.

In order for a participant to be eligible for LTD benefits, the participant must meet the definition

of a "covered disability" as outlined in the First and Second Tiers.  Under the First Tier, a "covered

disability" is met when a participant is totally and continuously unable to perform the essential duties of her

regular position with Eaton.  After the first 24 months, eligibility under the Tier is met only when the

participant is "totally and continuously unable to engage in any occupation or perform any work for

compensation or profit."  AR 00031.

The initial FCE determination on April 29, 2003, concluded that plaintiff was capable of performing

sedentary demand work.  Additionally, plaintiff's own treating physician, Dr. Mallonee verified the 2003

FCE.  Because plaintiff's position at that time was a heavy demand position, plaintiff met the First Tier

definition with the initial FCE determination.

When plaintiff's benefits expired after 24 months, Broadspire reevaluated her condition to

determine eligibility for the Second Tier benefits.  Before the expiration, Broadspire enlisted additional

medical documentation from her two treating physicians, Dr. Mallonee and Dr. Wesley, as well as requiring

plaintiff to undergo a second FCE and an IME.

The tests concluded that plaintiff did not meet the Second Tier requirements.  First, the 2004 FCE

demonstrated that plaintiff could still perform a sedentary demand position.  Additionally, the IME,

conducted on September 20, 2004, concluded that plaintiff could perform a sedentary demand occupation.

Additionally, at the appeal stages, three independent Peer Reviewers concluded that no objective evidence existed for plaintiff to qualify for Second Tier LTD benefits.  The Claims Administrator requested that two separate independent specialists in neurology and physical medicine/rehabilitation conduct comprehensive peer reviews of plaintiff's claim record.  Each peer review concluded that the documents did not establish plaintiff's claim for continued benefits.  Finally, Eaton also sent plaintiff's entire file to MRIoA for review, which confirmed that Navarro could perform a sedentary position.  The submission of plaintiff's claim to independent experts reflects a thorough investigation.  *See Fought*, 379 F.3d at 1005-06.

The record as a whole demonstrates the presence of substantial evidence supporting the decision to deny benefits.  The court finds that the administrator's denial of benefits was not arbitrary and capricious.

Plaintiff also argues that her claim was not given a full and fair review because the Administrator did not provide her with the two final Peer Reviews and the MRIoA Reviewer's report before issuing the final denial letter.

In *Metzger v. UNUM Life Insurance Co. of America*, 476 F.3d 1161 (10th Cir. 2007), the Tenth Circuit held that the ERISA statute directs a plan to supply to a claimant the documents and evidence upon which it relies at two stages in the review process: (1) prior to or at the outset of an administrative appeal and (2) after the final decision on appeal.  *Id.* at 1167-68.  "So long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses, this

two-phase disclosure is consistent with 'full and fair review.'" *Id*. at 1167.        Plaintiff was given a full and fair review because the two reports which plaintiff cites did not review or generate new data, but only reviewed medical data already contained in plaintiff's claim file.   Therefore, under *Metzger*, the Administrator was not required to provide the reports to plaintiff prior to rendering its final decision on appeal.  Plaintiff's assertion that she did not receive a full and fair review is without merit.

Finally, Eaton asserts a counterclaim that plaintiff owes an outstanding overpayment of $4780.67. Under the Plan, the monthly LTD benefit is reduced by the total amount of any Social Security Disability ("SSD") benefits for which a participant is eligible.  Eaton has the right to recover benefit payments made in excess of the amount a participant is eligible to receive under the Plan, including payments not reduced by amounts received from Social Security.

Plaintiff initially received LTD benefits in April 2003, although, at that point, she did not receive SSD benefits.  In December 2003, plaintiff was approved for SSD benefits.   The SSD benefits were retroactive to April 2003.  Plaintiff was paid a lump sum of $7422.00 for the months of April to November 2003.  In all, plaintiff received $1892.80 each month under the LTD plan and $1237.00 each month for the SSD benefits.  However, upon approval of the SSD, plaintiff was only entitled to receive $655.80 monthly from the LTD plan.  Although the Administrator attempted to recover overpayments by reducing plaintiff's LTD monthly benefit payment to zero through the months of August 2003 through January 2004, plaintiff's eligibility for LTD benefits ended prior to the full recovery of the overpayment, on January 31, 2005.  Therefore, Eaton is entitled to an outstanding overpayment from plaintiff in the amount of $4780.67.

IT IS ACCORDINGLY ORDERED this 9th day of July, 2007, that defendants' motion for summary judgment (Dkt. No. 27) is granted and plaintiff's motion for summary judgment (Dkt. No. 25) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE